1  McGREGOR SCOTT
   United States Attorney
2  ADRIAN T. KINSELLA
   Assistant United States Attorney
3  501 I Street, Suite 10-100
   Sacramento, CA 95814
4  Telephone: (916) 554-2700
   Facsimile: (916) 554-2900
5

6  Attorneys for Plaintiff
   United States of America
7

8              IN THE UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11 UNITED STATES OF AMERICA,        CASE NO.  2:19-MJ-00206-CKD

12                     Plaintiff,   UNITED STATES' MEMORANDUM IN
                                    SUPPORT OF EXTRADITION
13          v.

14 BRANDON NATHAN TEIXEIRA,

15                     Defendant.

16

17       On November 30, 2019, at the request of the Government of Canada and pursuant to the Treaty

18 on Extradition between the United States of America and Canada,[1] the United States sought a complaint

19 for the provisional arrest of the defendant, Brandon Nathan Teixeira ("Teixeira") for extradition to

20 Canada.  Doc. 1.  Teixeira was arrested on December 1, 2019 and remains in federal custody.  On

21 January 21, 2020, Canada timely submitted its formal request for extradition through diplomatic

22 channels.  *See* Doc. 14, Ex. 1-2.

23       Pursuant to 18 U.S.C. § 3184, this Court must now hold a hearing to consider the evidence of

24 criminality presented by Canada and to determine whether it is "sufficient to sustain the charge under

25 the provisions of the proper treaty or convention."  The United States respectfully submits this

26

27 [1] *See* U.S.-Can., Dec. 3, 1971, 27 U.S.T. 983, as amended by the Protocol Amending the Extradition
   Treaty with Canada, U.S.-Can., Jan. 11, 1988, S. TREATY DOC. NO. 101-17 (1990), and the Second
28 Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 12, 2001, S. TREATY DOC.
   NO. 107-11 (2002) (collectively the "Treaty").

                                    1

memorandum to set forth the procedural and factual background of the case and to explain the legal standards and protocols that govern extradition proceedings under Section 3184.  As detailed below, the evidence submitted by Canada fulfills the Treaty requirements.  The Court should therefore "certify the same" to the Secretary of State, who will decide whether to surrender the fugitive "according to the treaty." [2]  *Id.*

## BACKGROUND

### A.  Procedural Background

Teixeira is wanted by Canada for trial on the following charges stemming from three separate incidents that occurred between 2015 and 2017: one count of first degree murder, in violation of section 235(1) of the Criminal Code of Canada, two counts of attempted murder, contrary to section 239(1)(b) of the Criminal Code of Canada, two counts of aggravated assault, in violation of section 268(2) of the Criminal Code of Canada, one count of assault with a weapon, in violation of section 267(a) of the Criminal Code of Canada, one count of uttering threats, in violation of section 264.1(1) of the Criminal Code of Canada, and one count of discharging a firearm with intent, in violation of section 244(1) of the Criminal Code of Canada.  These offenses correspond to violations of various U.S. criminal statutes, as set forth below.

Canadian authorities charged Teixeira in three informations, and Teixeira is subject to three outstanding warrants that seek his arrest on the eight charges listed above.  *See* Doc. 14, Ex. 1 at 21, 23, 33, 35, 37-38, 40-41.  These warrants are in full force and effect.  *See id.* at 10, 15-16.

On Saturday, November 30, 2019, the United States swore out a complaint and obtained an arrest warrant pursuant to 18 U.S.C. § 3184 seeking Teixeira's provisional arrest with a view toward his extradition based on the Canadian authorities' request.  Teixeira was arrested in the Eastern District of California on Sunday, December 1, 2019, and the United States filed the complaint on Monday,

---

[2] This case is currently set for a status conference on February 27, 2020, at which Teixeira is expected to inform the Court that he does not intend to challenge Canada's request for his extradition.  However, Teixeira has declined to waive or consent to extradition.  Accordingly, the government sets forth its position on certification of extradition in this memorandum and seeks to preserve its arguments in the event Teixeira decides to contest extradition.

December 2, 2019.  Doc. 1.  Canada timely submitted its formal request for Teixeira's extradition through diplomatic channels on January 21, 2020.  *See* Doc. 14, Ex. 1-2.

**B. Factual Background**

Canada seeks Teixeira's extradition on a series of violent offenses relating to the three incidents. Specifically, Canada alleges that Teixeira committed the following acts:

(1) On October 23, 2017, Teixeira murdered N.K. and attempted to murder Person A by intentionally discharging a firearm;

(2) On June 26, 2016, Teixeira uttered criminal threats against D.C. and committed an aggravated assault against D.C. by using a weapon (knife);

(3) On August 23, 2015, Teixeira attempted to murder P.D. and committed an aggravated assault against C.W. by using a knife.

**1. Incident on October 23, 2017**

A cooperating witness, Witness B, and the surviving victim, Person A, told Canadian authorities that Teixeira met with N.K. on the night of his murder in Surrey, British Columbia.  Doc. 14, Ex. 1 pp 47-51.  Person A, N.K.'s friend, explained that Teixeira shot N.K. with a handgun and then shot at her, striking her several times, while she escaped in a car.  *Id.* at 47-49.

The cooperating witness also told authorities about Teixeira's motive, which he "learned … directly from Teixeira."  *Id*. at 49-50.  Teixeira was purportedly motivated to kill N.K. because he believed that N.K. had previously arranged for other persons to kill Teixeira and because there was $160,000 contract to kill N.K.  *Id*. at 50.  An autopsy established that N.K.'s death was by multiple gunshot wounds, and the medical records of Person A showed that she was shot several times in the "left and right thighs."  *Id*. at 51.

**2. Incident on June 26, 2016**

Statements of staff members from the "Taphouse Bar" in Surrey, British Columbia told Canadian authorities that Teixeira attempted to enter the bar, seemingly "high on cocaine."  *Id*. at 52.  The bar's bouncer, D.C., refused Teixeira entry due to a dress code violation, and Teixeira verbally threatened him.  *Id*. at 54.  According to one witness, Teixeira told D.C. that he was "going to kill him."  *Id*.  After temporarily leaving the area, Teixeira returned to the bar, charged at D.C., stabbed him with a knife, and

ran away from the scene.  *Id*. at 55-56.  Canadian authorities observed six knife wounds to D.C.'s head, neck, shoulders, and wrist.  *Id*. at 52.  CCTV footage showed the altercation.  *Id*. at 56.  D.C. and other eyewitnesses also identified Teixeira as the individual who threatened and attacked D.C.  *Id.* at 46-58.

### 3.  Incident on August 23, 2015

According to witness statements provided to Canadian authorities, P.D., C.W., C.S., were visiting the Haney Public House in Maple Ridge, British Columbia, when they met S.H.  S.H. told people at the bar that she "want[ed] to do some blow."  *Id*. at 60.  In response to S.H.'s request for cocaine, C.S. purchased cocaine from Teixeira in the washroom of the bar.  P.D. also invited S.H. to go to his home to do cocaine and sit in a hot tub.  *Id*.

However, Teixeira wanted S.H. to leave the bar with him instead.  A fight ensued when S.H. turned down Teixeira, and Teixeira stabbed P.D. and C.W. in the neck with a knife.  *Id*. at 60-61.  P.D. and C.W. chased Teixeira, until P.D. collapsed from loss of blood.  *Id*. at 60.  A truck then appeared and interrupted the chase by clipping C.W.  *Id*.  Teixeira then entered the passenger side of the truck and escaped.  *Id*. at 61.  P.D. was stabbed in the jugular, lost 80% of his blood, and was on life support for several weeks.  He also suffered kidney and liver failure, requiring intestine removal.  *Id*. at 62.  CCTV captured video of Teixeira with a knife in his hand, Teixeira stabbing the victims, and the ensuing chase.  *Id*. at 58-64.

### DISCUSSION

Through the hearing prescribed by 18 U.S.C. § 3184, the Court must determine whether to certify to the Secretary of State that the evidence submitted by Canada is "sufficient to sustain" the charges against Teixeira.  If any evidence is offered by Teixeira, the Court should rule on its admissibility.  Once the evidentiary record is complete, the Court should make written findings of fact and conclusions of law as to each of the elements for certification.  *See Shapiro v. Ferrandina*, 478 F.2d 894, 906 (2d Cir. 1973).  If the Court finds that the requirements for certification have been met, it must provide the certification to the Secretary of State, together with a copy of any testimony taken before the Court, and must commit Teixeira to the custody of the United States Marshal to await the Secretary's final determination regarding surrender.  18 U.S.C. § 3184; *see Martin v. Warden, Atlanta Pen.*, 993 F.2d 824, 828-29 (11th Cir. 1993).  The Secretary of State will then decide whether to surrender him to

the demanding country.  *See*, *e.g.*, *Santos v. Thomas*, 830 F.3d 987, 993 (9th Cir. 2016) (en banc).

A.    **The Documentary Evidence Submitted by Canada Supports Certification**

"The procedural framework of international extradition gives to the demanding country advantages most uncommon to ordinary civil and criminal litigation," including "[u]nique rules of wide latitude [that] govern reception of evidence" when offered by the requesting state.  *Sayne v. Shipley*, 418 F.2d 679, 685 (5th Cir. 1969) (citation and internal quotation marks omitted), *cert. denied*, 398 U.S. 903 (1970).

Extradition treaties do not contemplate the introduction of live witness testimony at extradition proceedings because to do so "would defeat the whole object of the treaty."  *Bingham v. Bradley*, 241 U.S. 511, 517 (1916).  Thus, hearsay evidence is admissible at extradition hearings and may properly support a finding of extraditability.  *See id.* (rejecting fugitive's claim that ex parte witness affidavits submitted in support of his extradition to Canada should not be considered because he had not had the opportunity to cross-examine those witnesses); *see also, e.g., United States v. Zanazanian*, 729 F.2d 624, 626-27 (9th Cir. 1984) (unsworn written statements may properly form the basis for extradition); *Simmons v. Braun*, 627 F.2d 635, 636 (2d Cir. 1980) (same).  Accordingly, a finding of extraditability may be, and typically is, based entirely on the authenticated documentary evidence and information provided by the requesting government.  *See, e.g., Manta v. Chertoff*, 518 F.3d 1134, 1139-40, 1145-47 (9th Cir. 2008) (upholding probable cause determination based on investigation report written by the prosecutor); *Afanasjev v. Hurlburt*, 418 F.3d 1159, 1162-63 & 1166 (11th Cir.) (upholding probable cause determination based on unsworn 106-page bill of indictment prepared by a foreign investigator summarizing witness statements and other hearsay evidence), *cert. denied*, 546 U.S. 993 (2005); *Bovio v. United States*, 989 F.2d 255, 259-61 (7th Cir. 1993) (Swedish investigator's statement sufficient to establish probable cause).

The certification of documents introduced during an extradition hearing is governed by the Treaty and by 18 U.S.C. § 3190.  Article 9 of the Treaty lists the documents the Government of Canada is required to submit when it makes a request for the extradition of a fugitive charged with a crime. Section 3190 provides that "properly and legally authenticated" documentary evidence including "depositions, warrants, or other papers or copies thereof . . . shall be received and admitted."  18 U.S.C.

§ 3190 (emphasis added); *see also Manta*, 518 F.3d at 1146; *Oen Yin-Choy v. Robinson*, 858 F.2d 1400, 1406 (9th Cir. 1988), cert. denied, 490 U.S. 1106 (1989).

Proof that the authentication is proper exists if the documents are accompanied by the certificate of an appropriate U.S. diplomatic or consular officer in the requesting country attesting that the documents would be admissible for similar purposes in that country. 18 U.S.C. § 3190. The documents filed in this case are accompanied by such a certification by Richard M. Mills, Chargé d'Affaires of the United States of America to Canada, attesting to the authenticity of the foreign official's signature. Doc. 14, Ex. 1 at 2. Accordingly, the documents are properly authenticated and thereby admissible in this proceeding. *See* 18 U.S.C. § 3190; *see also* Declaration of Katherine C. Fennell at Doc. 14, Ex. 2 at 4

**B.      The Requirements for Certification are Satisfied**

The Court must certify a fugitive as extraditable where: (1) the judicial officer is authorized to conduct the extradition proceeding; (2) the Court has jurisdiction over the fugitive; (3) the applicable treaty is in full force and effect; (4) the crimes for which surrender is requested are covered by the applicable treaty; and (5) there is sufficient evidence to support a finding of probable cause as to each charge for which extradition is sought. *See*, *e.g.*, *Zanazanian*, 729 F.2d at 625-26. Each of these elements are met in this case.

**1.      This Court Has Authority over the Proceeding**

The extradition statute authorizes proceedings to be conducted by "any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State." 18 U.S.C. § 3184. As such, the judicial officer conducting the extradition hearing prescribed by Section 3184 does not exercise "any part of the judicial power of the United States," *In re Extradition of Kirby*, 106 F.3d 855, 866 (9th Cir. 1997), but is rather acting in a "non-institutional capacity by virtue of a 'special authority,'" *In re Extradition of Howard*, 996 F.2d 1320, 1325 (1st Cir. 1993). It is well settled that both magistrate judges and district judges may render a certification under Section 3184. *See Austin v. Healey*, 5 F.3d 598, 601-02 (2d Cir. 1993), *cert. denied*, 510 U.S. 1165 (1994). This Court is therefore authorized to conduct the hearing in this case. *See id.*; *see also* Local Rule 302(b)(8).

//

**2.  This Court Has Jurisdiction over Teixeira**

It is also well settled that the Court has jurisdiction over a fugitive found within its jurisdictional boundaries.  18 U.S.C. § 3184 ("[A judge] may, upon complaint made under oath, charging any person found within his jurisdiction, … issue [its] warrant for the apprehension of the person so charged."); *Pettit v. Walshe*, 194 U.S. 205, 219 (1904); *Grin v. Shine*, 187 U.S. 181, 185-86 (1902).  Teixeira was arrested in this jurisdiction on December 1, 2019.  Accordingly, this Court has jurisdiction over him.

**3.  The Relevant Treaty Is in Full Force and Effect**

Section 3184 provides for extradition in instances in which a treaty or convention is in force between the requesting state and the United States.  *See id.*  In this case, Katherine C. Fennell, Attorney-Adviser in the Office of the Legal Adviser for the Department of State, has provided a declaration attesting that the Treaty in full force and effect between Canada and the United States.  Doc. 14, Ex. 2 at 2, ¶ 2.  The Court must defer to the Department of State's determination in this regard.  *See, e.g.*, *Kastnerova v. United States*, 365 F.3d 980, 986 (11th Cir. 2004) ("[E]very other Court of Appeals to consider whether a treaty has lapsed has deferred to the Executive's determination."), *cert. denied,* 541 U.S. 1090 (2004); *cf. United States v. Duarte-Acero,* 296 F.3d 1277, 1282 (11th Cir. 2002) ("[T]he State Department's interpretation of a treaty is entitled to great deference."), *cert. denied,* 541 U.S. 1090 (2004).

**4.  The Charged Crimes Are Covered by the Treaty**

Article 1 of the Treaty provides for the return of fugitives charged with, or convicted of, an extraditable offense.  Offenses are extraditable if they are "punishable by the laws of both Contracting Parties by imprisonment or other form of detention for a term exceeding one year or any greater punishment."  Treaty, Art. 2; Doc. 14, Ex. 2 at 35.

The dual criminality requirement is met where the description of criminal conduct provided by Canada in support of its charges would be criminal under U.S. federal law, the law of the state in which the hearing is held, or the law of a preponderance of the states, if it had been committed here regardless of whether the Canadian and U.S. crimes are identical.  *See, e.g., Cucuzzella v. Keliikoa*, 638 7 F.2d 105, 107 (9th Cir. 1981); *Caplan v. Vokes*, 649 F.2d 1336, 1334 n.16 (9th Cir. 1981); *Theron v. U.S. Marshal*, 832 F.2d 492, 496 (9th Cir. 1987) (abrogated on other grounds).

Based on his alleged conduct, Teixeira is charged with the following: one count of first degree murder, in violation of section 235(1) of the Criminal Code of Canada, two counts of attempted murder, contrary to section 239(1)(b) of the Criminal Code of Canada, two counts of aggravated assault, in violation of section 268(2) of the Criminal Code of Canada, one count of assault with a weapon, in violation of section 267(a) of the Criminal Code of Canada, one count of uttering threats, in violation of section 261.1(1) of the Criminal Code of Canada, and one count of discharging a firearm with intent, in violation of section 244(1) of the Criminal Code of Canada.  The conduct underlying each of these counts would constitute criminal offenses in the United States that carry punishments of more than one year imprisonment.

Specifically, had the conduct been committed in the United States, Teixeira could have been charged with the following corresponding offenses:  (1) the conduct underlying Canada's charge of first degree murder could be charged under 18 U.S.C. § 1111,[3] which carries a penalty of imprisonment for life; (2) the conduct underlying Canada's two charges of attempted murder could be charged under 18 U.S.C. § 1113, which carries a penalty of up to 20 years' imprisonment; (3) the conduct underlying Canada's two charges of aggravated assault and one charge of assault with a weapon could be charged under California Penal Code § 245(a)(1), which carries a penalty of up to 4 years' imprisonment; (4) the conduct underlying Canada's charge of uttering threats could be charged under 18 U.S.C. § 875(c), which carries a penalty of up to 5 years' imprisonment; and (5) the conduct underlying Canada's charge of discharging a firearm with intent could be charged under California Penal Code § 245(a)(2), which carries a penalty up to 4 years' imprisonment.

**5.  Canada's Evidence Establishes Probable Cause that the Fugitive Committed the Charged Offenses**

The standard of proof to find the evidence "sufficient to sustain the charge . . ." pursuant to Section 3184 is the familiar domestic requirement of probable cause.  The Court must conclude there is probable cause to believe that the crimes charged by Canada were committed and that the person before the Court committed them.  *Manta*, 518 F.3d at 1143-47.  The evidence is sufficient, and probable cause

---

[3] Article 2(2)(i) of the Treaty states that offenses are extraditable notwithstanding jurisdictional elements contained within U.S. statutes.  Doc 14, Ex. 2 at 35.

is established, if it would cause a "prudent man" to "believ[e] that the (suspect) had committed or was committing an offense." *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975) (internal quotation marks and citation omitted); *see also Collins v. Loisel*, 259 U.S. 309, 316 (1922) ("The function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction."); *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925) ("Competent evidence to establish reasonable grounds is not necessarily evidence competent to convict."). The extradition judge's probable cause determination is "not a finding of fact 'in the sense that the court has weighed the evidence and resolved disputed factual issues,'" but instead "'serve[s] only the narrow function of indicating those items of submitted evidence on which the decision to certify extradition is based.'" *Quinn v. Robinson*, 783 F.2d 776, 791 (9th Cir. 1986) (citation omitted).

The facts summarized above and set forth in the documents supporting the extradition request establish probable cause that Teixeira committed the eight offenses for which extradition is sought. Specifically, several eyewitnesses provided their accounts to the Canadian authorities, and those accounts establish a reasonable belief that Teixeira murdered N.K., attempted to murder Person A and P.D., committed aggravated assault against D.C. and C.W., assaulted D.C. with a weapon, discharged a firearm against Person A, and threatened D.C., all in violation of the Criminal Code of Canada *See* Doc. 14, Ex. 1, pp. 10-13, 45-64.

## CONCLUSION

For the foregoing reasons, the elements for certification of extradition are met in Teixeira's case. Therefore, the United States requests that the Court hold a hearing pursuant to 18 U.S.C. § 3184 and certify to the Secretary of State that he is extraditable to Canada on the charges for which his extradition is requested.

Dated: February 27, 2020

McGREGOR W. SCOTT
United States Attorney


 /s/ ADRIAN T. KINSELLA
ADRIAN T. KINSELLA
Assistant United States Attorney

1  McGREGOR SCOTT
   United States Attorney
2  ADRIAN T. KINSELLA
   Assistant United States Attorney
3  501 I Street, Suite 10-100
   Sacramento, CA 95814
4  Telephone: (916) 554-2700
   Facsimile: (916) 554-2900
5

6  Attorneys for Plaintiff
   United States of America
7

8              IN THE UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11 In the Matter of the Extradition of          CASE NO.  2:19-MJ-00206-CKD

12 Brandon Nathan Teixeira
13 a/k/a "Kobe"                                  [PROPOSED]  CERTIFICATION AND
   a/k/a "K"                                     COMMITTAL FOR EXTRADITION
14 a/k/a "Colby"
   a/k/a "Jordan Dougall"
15 a/k/a "Ryan Provencher"

16

17        Having held an extradition hearing on February 27, 2020, and after considering the evidence, in

18 particular, the certified and authenticated documents submitted by the Government of Canada, and the

19 pleadings and the arguments of both counsel, the Court finds and certifies to the Secretary of State as

20 follows:

21        (1) This Court has jurisdiction over, and the undersigned is authorized to conduct, extradition

22 proceedings pursuant to Title 18 U.S.C. 3184 and Local Rule 302(b)(8);

23        (2) This Court has personal jurisdiction over Brandon Nathan Teixeira ("Teixeira) found and

24 arrested in this District on December 1, 2019 pursuant to a complaint filed by the United States in

25 response to the request of Government of Canada for the arrest and extradition of the Fugitive;

26        (3) The extradition treaty between the United States and the Government of Canada, U.S.-Can.,

27 Dec. 3, 1971, 27 U.S.T. 983, as amended by the Protocol Amending the Extradition Treaty with Canada,

28 U.S.-Can., Jan. 11, 1988, S. TREATY DOC. NO. 101-17 (1990), and the Second Protocol Amending

the Extradition Treaty with Canada, U.S.-Can., Jan. 12, 2001, S. TREATY DOC. NO. 107-11 (2002) (collectively the "Treaty"), was in full force and effect at all times relevant to this action;

(4) The Brandon Nathan Teixeira, also known as "Kobe," "K," "Colby," "Jordan Dougall," "Ryan Provencher," sought by the Canadian authorities and the Brandon Nathan Teixeira, also known as "Kobe," "K," "Colby," "Jordan Dougall," "Ryan Provencher," arrested in this District for extradition and brought before this Court are one and the same person;

(5) The Fugitive has been charged in Canada with one count of first degree murder, in violation of section 235(1) of the Criminal Code of Canada, two counts of attempted murder, contrary to section 239(1)(b) of the Criminal Code of Canada, two counts of aggravated assault, in violation of section 268(2) of the Criminal Code of Canada, one count of assault with a weapon, in violation of section 267(a) of the Criminal Code of Canada, one count of uttering threats, in violation of section 264.1(1) of the Criminal Code of Canada, and one count of discharging a firearm with intent, in violation of section 244(1) of the Criminal Code of Canada.  The Government of Canada has jurisdiction over this criminal conduct;

(6) The above referenced Treaty between the United States and Canada, pursuant to Article 2, encompasses the offenses for which Teixeira has been charged and for which extradition is sought for trial;

(7)  The Government of Canada submitted documents that were properly authenticated and certified in accordance with Title 18 U.S.C. § 3190 and in accordance with the terms of the Treaty. Those documents include the pertinent text for the crimes with which Teixeira has been charged;

(8)  There is probable cause to believe that the Brandon Nathan Teixeira before this Court, the same person identified in the extradition request from the Government of Canada, committed the offenses for which extradition is sought;

(9) The evidence before this Court is sufficient to justify Teixeira's arrest and committal for trial if the offense had been committed in the United States, including evidence proving the person requested is the person to whom the warrant refers.  This finding rests upon the documents submitted by the Government of Canada in this matter.

THEREFORE, pursuant to 18 U.S.C.  § 3184 and the above findings, I certify the extradition of

Brandon Nathan Teixeira, also known as "Kobe," "K," "Colby," "Jordan Dougall," and "Ryan Provencher," to Canada on all offenses for which extradition was requested, and commit Teixeira to the custody of the United States Marshal pending further decision on extradition and surrender by the Secretary of State pursuant to 18 U.S.C. § 3186.

I further order that the Clerk of this Court forward a certified copy of this Certification and Committal for Extradition, together with a copy of the evidence presented in this case, including the formal extradition documents received in evidence and any testimony received in this case, to the Secretary of State.


Dated: _____          _____
                                           Hon. Allison Claire
                                           U.S. MAGISTRATE JUDGE